OPINION AND ORDER

This case presents the issue of whether federal standing doctrine applies in Hopi Tribal Court in a case involving a dispute over who should rightfully control a bank account held in the name of the Village of Mishongnovi. Appellant and Respondents each allege that they are the rightful governing body of the Village. The ultimate resolution of the case turns on the determination of who is the Village’s legitimate governing authority. As such, this case also raises the issue of whether this central factual determination is a political question that may be resolved by the tribal court.
STATEMENT OF FACTS[1]
Appellants seek control over a bank account held by respondents in the name of the Village of Mishongnovi. Appellant is the Cultural Preservation Board (CPB), which claims to be the operating board of Mishongnovi. Appellant claims political authority was delegated to it by an individual acting as spokesperson for Cortez Lomahukluh, Mishongnovi’s traditional Village leader. The CPB alleges that Lo-mahukluh has been considered the traditional and secular leader of Mishongnovi since 1945, although he has not been ordained kikmongwi because the necessary sacred ceremonial objects have been lost.
Respondents are members of the Board of Directors of the Village of Mishongnovi. The Board of Directors also claims to be the only legitimate governing body of the Village. Respondents trace their authority to their election to the Board of Directors in 1992. This election was held in accordance with “Operating Guidelines” approved at a Village meeting in 1988. Respondents contend that the kikmongwi has never directed the political affairs of Mish-ongnovi. Rather, they claim, for as long as anyone can remember, Village decisions have been made through building consensus at meetings of various Village committee meetings. The Board of Directors was created to streamline the committee system and manage the Village’s political affairs.
The CPB alleges that the traditional leader of Mishongnovi dissolved the Board of Directors and authorized his spokesperson to appoint the CPB as the Village’s new operating board. In November, 1992, Hopi Vice Chairman Patrick Dallas received written statements from Lomahuk-luh declaring that he had invested a spokesperson with “authority of leadership to speak on my behalf on all Hopi Tribal matters for the village of Mishongnovi.” On that same day, respondent Bernita Hu-meyestewa closed out a Bank of America account in the name of the Village of Mish-ongnovi containing $68,441.68. Humeyes-tewa then deposited $68,609.39 into a First Interstate Bank account in the name of the Village of Mishongnovi. Respondents are the only authorized signatories on the bank account. On December 1, 1992, Hu-meyestewa and respondent Rolanda Morris signed checks from the Village bank account payable to Rolanda Morris in the amount of $2065.44. Morris alone signed a check for $2600.00 to Cake Chevrolet.

PROCEDURAL HISTORY

On April 6, 1994, the Appellants filed a complaint as Mishongnovi’s governing *298 body against Respondents for conversion of Village funds contained in the Bank of America account. The complaint alleged that Respondents negligently allowed the improper expenditure of funds from the account. The Appellants sought replevin to obtain the funds and all other Village property possessed by the Respondents. The Appellants also sought a declaratory judgment from the court recognizing themselves as the lawful owner of the funds contained in the disputed bank account.
Respondents cross-claimed to enjoin the Appellants from usurping Respondents’ public authority. They also sought a declaratory judgment that the Board of Directors had not been dissolved. Both parties filed motions for summary judgment seeking the Hopi Tribal Court’s recognition that their respective board was the proper governing body of Mishongnovi.
On January 4, 1996, the Hopi Tribal Court granted partial summary judgment to the Appellants, holding that Mishongno-vi has a traditional form of Hopi government with a kikmongwi. However, the court held that it could not decide the issue of who is the proper and appropriate governing body of Mishongnovi without first determining the identity of the Village’s kikmongwi and ascertaining the extent of the kikmongwi’s authority to name a spokesperson empowered to appoint a governing body.
The Appellant moved for reconsideration of its motion for summary judgment in light of a decision in Interim Board of Directors of Sh ungopavi v. Quamahongne-wa, No. 95CV000097, Order and Decision (1997). Shungopavi v. Quamahongnewa addressed whether a village governing body had standing to use the tribal court to air generalized grievances about the conduct of former members of the village government. The Appellant argued that following the logic of the decision in Shun-gopavi v. Quamahongnewa, the tribal court lacked jurisdiction to determine the identity of the Village’s kikmongwi because the respondents lacked standing to raise this issue in their cross-claim.
After reviewing the decision in Shungo-pavi v. Quamahongnewa, the tribal court on September 3, 1996, vacated its grant of partial summary judgment and dismissed the entire case for lack of standing by the Appellant. The court held that the Appellant did not have standing because it sought to advance a general interest common to members of the Mishongnovi Village, rather than a particularized interest.
The Appellant filed an appeal on September 24, 1996, 21 days after the Tribal Court issued its order of dismissal and 20 days after certification that copies of the order were delivered/mailed. The Appellant argues on appeal that it has standing to bring the suit because it alleged particular, actual, concrete injury to itself. Respondents argue that the Hopi Appellate Court lacks jurisdiction to consider the appeal because it was filed untimely. Respondents further argue that the Appellants lack standing because Appellants allege generalized complaints about the political process that can be raised in a political forum and are non-justiciable in tribal court.

ISSUES ON APPEAL

1. Does the Hopi Appellate Court lack jurisdiction over the appeal because it was not filed within the 20 day window prescribed by Rule 37(c) of the Hopi Indian Rules of Civil and Criminal Procedure?
2. Is federal standing doctrine consistent with Hopi custom and tradition?
3. What is the appropriate standing test in Hopi Tribal Court?
*299 4. Does the Cultural Preservation Board have standing to present its claims in Tribal Court?
5. Is the Hopi Tribal Court barred from determining who is the rightful governing body of Mishongnovi because the determination involves a non-justiciable political question?

DECISION OF THE COURT

I. Under Rule 8(d) of the Hopi Indian Rules of Civil Procedure This Appeal Is Timely.
Rule 37(c) of the Hopi Indian Rules of Civil and Criminal Procedure establishes that the party appealing from the final judgment of the trial court must file a notice of appeal “[w]ithin 20 days from the entry of the order of judgment appealed.” H.I.R.C.C.P. Rule 37(c). However, Rule 3(d) provides for a deadline to be extended by three days whenever service is accomplished by mail. H.I.R.C.C.P. Rule 37(d).
In this case, the judgement was entered on September 3, 1996 and mailed to the parties on September 4, 1996. The Notice of Appeal was filed on September 24, 1996, 21 days following the entry of judgment. Accordingly, it is within the 23-day deadline provided by Rule 3(d) and is timely.
II. Federal Standing Doctrine May Not Be Applied In Hopi Tribal Court Because It Is Inconsistent With Hopi Custom. And Tradition.
A. The Tribal Court erred by not fully analyzing the applicability of federal standing doctrine to determine its consistency with Hopi custom and tradition.
The standing issue presented in this case is one of first impression for this court. The essence of any standing question “is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues.” Warth v. Seldin, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 a 2205 (citation omitted). Standing is a concept used to determine if a party is sufficiently affected by a controversy to be the proper party to bring a lawsuit. Standing is a jurisdictional issue; ideally it relates to the power of courts to hear and decide cases and does not concern the ultimate merits of the substantive claims involved in an action.
The purpose of standing doctrine is to ensure that: (1) litigants are truly adverse and therefore likely to present the case effectively; (2) the people most directly concerned are able to. litigate the questions at issue; and (3) a concrete case informs the court of the consequences of its decisions. Fletcher, The Structure of Standing, 98 Yale L.J. 221, 222 (1988).
The requirements of standing in Hopi Tribal Court are not specified by the Hopi Constitution, Hopi Ordinance 21 (establishing and defining the jurisdiction of tribal courts), nor any other ordinance or resolution approved by the Hopi Tribal Council. This case raises the important issue of how standing should be determined in the absence of any guidance from these sources of law. The trial court in Shungopavi v. Quamahmignewa, No. 95CV000097, Order and Decision (1997), grappled with this issue and its decision in that case provides the only substantive discussion of standing in any Hopi case. The trial court in the instant case dismissed the case for lack of standing based on the court’s reasoning in Shungopavi v. Quanmhongnewa.
The facts in Shungopavi v. Quamahong-neiva are worth noting because they bear some resemblance to the situation presented in this case. In Shungopavi v. Quama-hongnewa, the plaintiff was the Village’s Interim Board of Directors. The Interim Board brought an action against certain named individuals, including some who had previously served as members of the Shun- *300 gopavi Board of Directors. Shungopavi v. Quamahongnewa, Order at 2. The Interim Board alleged that the defendants conspired among themselves to convert and divert village funds to their own use. Id. at 3. The Interim Board sought an order directing the defendants to turn over to the plaintiff all financial books and records related to the funds; an accounting of all expenditures of funds; damages for funds converted to personal use; punitive damages; and the return of all Village property held by the defendants. Id.
The trial court considered whether the Interim Board had standing to bring the claim as part of its analysis of whether the court had jurisdiction to hear the matter. Noting the absence of Hopi law and cases on point, the trial court turned to federal and state case law for guidance. Skungo-pavi v. Quamahonyneiva, Order at 9. The trial court ultimately applied federal standing doctrine to the case, holding that the Interim Board lacked standing because it sought to advance “a general interest that is common to all members of the village.” Id. at 11. The court acknowledged that the plaintiff had a genuine interest in the matter but dismissed the action because the Interim Board had failed to set forth any “particular concrete injury directly to the plaintiff.” Id.
The court in Shungopavi v. Quania-hongnewa based its holding on the notion that a plaintiff “may not use the court as a forum in which to air generalized grievances about the conduct of the Village government or about the allocation of power within the Village government.” Id. at 12. Echoing federal constitutional and prudential principles, the court warned that, “suits of this nature would result in a direct expansion of judicial power into activities within the preview [sic] of legislative and executive branches of the tribal government and the village governments.” Id.
Although the trial court’s opinion in Shungopavi v. Quamahongnewa is a thoughtful application of federal standing principles to a Hopi village dispute, it inappropriately applies foreign law without analyzing that law to determine whether it is consistent with Hopi custom and tradition.
In Hopi Indian Credit Assoc, v. Thomas, AP-001-84, Opinion and Order (1996), this court clarified the analytical steps a tribal court must undertake before it may use foreign law. “[T]he customs traditions and culture of the Hopi Tribe must take precedence in a court’s decision of what law to apply before a court reaches the use of any foreign law, including federal or Arizona state law,” (except in instances where the Supremacy Clause of the U.S. Constitution is involved). Hopi Indian Credit Assoc, Opinion at 3. Specifically, the tribal court may resort to federal and state law in the absence of Hopi jurisprudence in an area of law only when that law is not inconsistent with the spirit or letter of Hopi law, custom, traditions or culture. Id., at 3; Hopi Res. H-12-76, § 2(b).
Thus, the trial court in the present case should have carefully analyzed whether the operational effect of federal standing doctrine was consistent with Hopi custom and tradition before it applied the doctrine in the case before it. This type of careful analysis would have revealed that narrow federal standing doctrine, developed to restrict litigants’ access to federal courts of limited jurisdiction, is inconsistent with Hopi customs of open and consensual dispute resolution and inappropriate given the Hopi tribal court’s general jurisdictional authority.
B. The restrictive nature of Federal standing doctrine is antithetical to Hopi traditions of open dispute resolution.
Federal standing doctrine blends constitutional requirements and so-called
*301 “prudential” considerations. Valley Forge jChristian College v. Americans United for Separation of Church and, State, 454 U.S. 464, 471, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982). A plaintiff has standing in federal court only if she satisfies the “case or controversy” requirement of Article III of the Constitution. To satisfy the demands of Article III, a plaintiff must meet three “irreducible minimum requirements” of standing. Valley Forge Christian College, 454 U.S. at 472, 102 S.Ct. 752.
First, the plaintiff must have suffered an “injury in fact”—an invasion of a legally protected interest which is “concrete and particularized” and “actual or imminent.” Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992). The United States Supreme Court defines “particularized” to mean that the alleged injury must affect the plaintiff in a personal and individual way. Defenders of Wildlife, 504 U.S. at 560, 112 S.Ct. at 2136 n. 1. The Court has used this jnarrow definition to repeatedly reject standing claims premised on an alleged injury derived from a plaintiffs taxpayer or citizen status. See United States v. Richardson, 418 U.S. 166, 94 S.Ct. 2940, 41 L.Ed.2d 678 (1974) (taxpayer and citizen lacked standing to challenge eonstitutionality of CIA Act); Valley Forge, 454 U.S. 464, 102 S.Ct. 752 (organization lacked standing to challenge conveyance of federal property to bible college under Establishment Clause). It is this prong of the standing test that the tribal court cited in dismissing the CPB’s claim for lack of standing.
The second constitutional standing requirement is that a causal connection must exist between the injury and the conduct of which the plaintiff complains. In other words, the injury must be fairly traceable to the challenged action. Defenders of Wildlife, 504 U.S. at 560, 112 S.Ct. 2180. The third requirement is that it must be likely that the injury can be redressed by a favorable court decision. Id.
In addition to meeting the Article III requirements, a plaintiff must also satisfy prudential concerns about, for example, “whether he should be able to assert the rights of someone else, or whether he should be able to litigate generalized social grievances.” Fletcher. 98 Yale L.J. at 222. Prudential principles restrain federal courts “from adjudicating ‘abstract questions of wide public significance’ which amount to ‘generalized grievances,’ pervasively shared and most appropriately addressed in the representative branches.” Valley Forge, 454 U.S. at 475, 102 S.Ct. at 760 (citing Warth v. Seldin, 422 U.S. 490, 499-500, 95 S.Ct. 2197, 2205-2206, 45 L.Ed.2d 343 (1975)). These prudential concerns reflect the notion that “the federal courts were simply not constituted as ombudsmen of the general welfare.” Valley Forge, 454 U.S. at 487, 102 S.Ct. at 767.
Much of the complexity and narrowness of federal standing doctrine is designed to ensure that the federal courts are confined to the limited, enumerated jurisdiction granted to them by Article III of the U.S. Constitution. The prudential considerations in particular reflect the Supreme Court’s preoccupation with restricting access to federal courts in order to screen out litigation aimed at articulating and enforcing broad public values, such as the separation of church and state. Valley Forge Christian College, 454 U.S. 464, 102 S.Ct. 752, and the right to an accounting of agency expenditures. United States v. Richardson, 418 U.S. 166, 94 S.Ct. 2940, 41 L.Ed.2d 678. Fletcher, 98 Yale L.J. at 227-28, 233-34, 267-71.
Given the institutional and philosophical foundations of federal standing doctrine, it is not surprising that trans *302 planting its elements into the body of Hopi common law poses substantial risk of rejection. The exclusionary and highly formalistic operation of federal standing doctrine is a poor fit in the Hopi tribal court system, which exists in a radically different cultural and institutional context.
First, the Hopi tribal court system operates squarely within a custom and tradition of open and consensual dispute resolution. Hopi traditions of discussion and consensus decision-making emphasize maximizing opportunities to air grievances and encouraging participation by dan and village members. Imposing a restrictive standing regime on Hopi tribal courts would deny tribal members access to an important neutral arena for adjudication of disputes.
In addition, unlike the federal judiciary, Hopi tribal courts are courts of general jurisdiction. Ordinance 21, section 1.7.1(a), expresses the Tribal Council’s intent to authorize the Hopi Tribal Court to exercise “the broadest jurisdiction” consistent with the constitution and laws of the Hopi Tribe and the United States.
Therefore, it is inappropriate to apply federal standing doctrine to proceedings in Hopi Tribal Court.
Other tribal courts have analyzed the applicability of federal standing doctrine in light of their respective tribal customs and traditions in much the same manner. The Supreme Court of the Winnebago Tribe of Nebraska adopted a modified standing doctrine in Rave v. Reynolds, 23 Indian L. Rep. 6150 (Winn.Sup.Ct.1996), in deference to traditional Indian dispute resolution customs. Similarly, in Bordeaux v. Wilkinson, 21 Indian L. Rep. 6131 (Ft. Bert. Tr. Ct.1993), the Tribal Court of the Three Affiliated Tribes of the Fort Bert-hold Reservation adopted a relaxed injury in fact requirement consistent with tribal concepts of communal property. In Bordeaux v. Wilkinson, the court held that the plaintiff had standing to challenge the authority of tribal council officers to award themselves bonus or merit pay because tribal property was at issue and the Three Affiliated Tribes embraced the concept of communal ownership of property. Therefore, the plaintiff was not required to show that the defendants’ actions deprived her of money that would otherwise have gone to her in order to assert standing.
III. The Proper Test Of Standing In Hopi Tribal Court Is Whether The Plaintiff Asserts Some Actual Or Threatened Injury That Is Logically Related To The Legal Claims It Seeks To Present To The Tribal Court.
This court must now articulate a tribal common law rule that will be consistent with Hopi customs of open dispute resolution and will serve certain important functions of standing doctrine. A Hopi common law standing rule should ensure that litigants in Hopi Tribal Court are truly adverse, that those parties most directly concerned are able to litigate the questions at issue, and that issues are raised in concrete cases that inform judges of the consequences of their decisions. This court has looked to the proceedings of other tribal courts for assistance in formulating an appropriate standing doctrine.
The decision of the Supreme Court of the Winnebago Tribe of Nebraska in Rave v. Reynolds, 23 Indian L. Rep. 6150 (Winn.Sup.Ct.1996), is particularly helpful on this point. The Winnebago Supreme Court articulated a common law rule of standing after rejecting the use of rigid federal standing doctrine as inconsistent with the laws and public policy of the Winnebago Tribe of Nebraska. The Winnebago Supreme Court announced that as a matter of tribal law, standing questions *303 must be resolved by inquiring whether the party at issue is asserting some actual or threatened injury that is logically related to the legal claims it seeks to present to the court. Rave v. Reynolds, 23 Indian L. Rep. at 6158.
The Winnebago Supreme Court specifically declined to include an additional rule precluding its tribal courts from entertaining generalized grievances or claims of injury, such as those sustained by all citizens, taxpayers or voters. Id, The Winnebago Supreme Court rejected this rule “in light of the traditions of openness to the healing of disputes which have long characterized traditional Indian dispute resolution.” Id. The court also expressly rejected the causal relationship and re-dressability prongs of federal standing doctrine. It noted that these tests “confuse the merits of the case with the preliminary question of standing and preclude an open airing of the dispute on the merits.” Id. The court held that these prongs conflicted with the “participatory traditions” of Indian dispute resolution. Id.
This court finds the Winnebago Supreme Court’s formulation of a standing test useful and consistent with Hopi customs and traditions. Standing doctrine should be simple and flexible and should not pose an impenetrable barrier for tribal members to challenge the actions of their village and tribal officials. This court therefore announces the rule that in order to have standing in Hopi Tribal Court, a part need only assert some actual or threatened injury that is logically related to the legal claims it seeks to present to the court.
IV. The Cultural Preservation Board, Meets The Standing Test Announced Today.
In this case, the CPB alleges on behalf of the Village that respondents are holding Village funds in a bank account without proper authority; that the respondents’ status as the only signatories for the bank account is preventing the Village from accessing these funds; and that some or all of respondents converted specific funds in a specific amount in an unlawful manner.
The injuries alleged by the CPB are logically related to the replevin, conversion and negligence claims it seeks to present to the court. The central injury alleged by the CPB is that it cannot gain access to the bank account in which Village funds are deposited because respondents are the only signatories on the account. This injury is related to the replevin claim in that replevin is an action whereby the owner or person entitled to repossession of goods may recover those goods from one who has wrongfully taken or detained the goods. Black’s Law Dictionary, 900-901 (6th ed.1991). The injury is also logically related to the conversion claim. Conversion is an unauthorized assumption and exercise of the right of ownership over goods belonging to another, to the alteration of their condition or the exclusion of the owmer’s rights. Blark’s Laiv Dictionary, at 231. Finally, the injury is related to the negligence claim because respondents control over the bank account could make them liable for negligently allowing the improper expenditure of funds from the account.
Because the injury it alleges logically relates to the claims it seeks to have adjudicated, the CPB has standing to bring its claim to tribal court.
V. Political Question Doctrine Does Not Bar The Tribal Court From Determining Who Is The Legitimate Governing Authority of Mishongnom.
Respondents argue in their answering brief that the tribal court is pre- *304 eluded from determining who is the legitimate governing body of Mishongnovi because the dispute involves a “political question” that the Hopi Constitution has reserved for resolution by the village of Mishongnovi itself. Respondents urge the court to apply federal political question doctrine as a check on the tribal court’s jurisdiction.
Like federal standing doctrine, political question doctrine is aimed at preserving the separation of powers that is one of the defining features of the United States Constitution. Federal courts regard “political question” as controversies that revolve around policy choices and value determinations that are constitutionally committed to Congress or the Executive branch, and are not subject to judicial review. Japan Whaling Association v. American Cetacean Society, 478 U.S. 221, 230, 106 S.Ct. 2860, 2866-66, 92 L.Ed.2d 166 (1986).
In Baker v. Carr, 869 U.S. 186, 217, 82 S.Ct. 691, 709, 7 L.Ed.2d 663 (1962), the Supreme Court identified six independent factors indicative of a political question: (1) a textually demonstrable constitutional commitment of the issue to a coordinate political branch; (2) a lack of judicially discoverable and manageable standards for resolving it; (3) the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; (4) the impossibility of a court’s undertaking independent resolution without expressing lack of the respect due coordinate branches of government; (5) an unusual need for unquestioning adherence to a political decision already made; or (6) the potentiality of embarrassment from multifarious pronouncements by various departments on one question.
The conceptual foundation for political question doctrine is the importance of preserving the separation of powers. This principle is only imperfectly applied to the Hopi system of government. Unlike the U.S. Constitution, the Hopi constitution does not establish a tripartite system of government that depends on the separation of executive, legislative and judicial functions to provide checks and balances. The Hopi Constitution vests legislative and executive authority in one branch of government, the Tribal Council. The Hopi Constitution also empowers the Tribal Council to establish courts “for the settlement of claims and disputes, and for the trial and punishment of Indians within the jurisdiction charged with offenses” against the Tribal Council’s ordinances. Hopi Constitution, Article VI, Section 1(g). Through Hopi Ordinance 21, the Tribal Council has invested the Tribal Court system with the “broadest exercise of jurisdiction” consistent with the constitution and laws of the Hopi Tribe and the United States. Hopi Ordinance 21, Chapter 1.7.1.
Although the concern for separation of powers may not have the same resonance in the Hopi Tribal Court system as in the federal judiciary, political question doctrine may nonetheless be useful in determining whether the Tribal Court should refrain from deciding certain disputes. However, the factors enumerated in Baker v. Carr, must be modified to reflect the distinct institutional framework of Hopi government. Federal political question doctrine very specifically Evolved out of a constitutional scheme that granted the federal judiciary only limited jurisdiction. In contrast, Hopi courts are courts of general jurisdiction and have been empowered by the Tribal Council to exercise broad authority to resolve disputes. Section 1.2.8(a) of Hopi Ordinance 21 gives the Hopi Tribal and Appellate Courts broad jurisdiction to answer certified questions of tribal law. This grant of authority implies that the eourt has broad jurisdiction to *305 resolve issues that may arise from the Hopi system of government. Within this distinct institutional context, political question doctrine may restrain the Tribal Court’s authority to resolve disputes only when the “texturally demonstrable constitutional commitment” of the issue to another branch in the Hopi Constitution.
In essence, respondents argue that Article III, Section 3 of the Hopi Constitution[2] reserves “to the villagers themselves” the power to decide which rival faction is the rightful village authority. Applying the first factor enumerated in Baker v. Carr, we do not find that Article III. Section 3 is a “textually demonstrable constitutional commitment” of this issue to a “coordinate branch of government.” It is not at all clear from this or any other provision of the Hopi Constitution that the village or the Tribal Council alone may hear a challenge to the legality of the actions of individuals claiming to be a village’s governing body. Because the Hopi Constitution does not explicitly give another entity of the Hopi government exclusive jurisdiction over this type of dispute, we hold that the political question doctrine does not preclude the Tribal Court from resolving the issues raised in this case.
V. The CPB Is Entitled To Have The Trial Court Decide Its Claims On The Merits.
On remand the trial court is faced with the daunting task of sorting through each party’s claim to be the only legitimate governing body of the Village of Mishong-novi. No single factor is likely to be determinative in this case.[3] The trial court should base its decision on the totality of the facts, taking into account, for example, whether the Village’s traditional leadership is intact; whether the traditional leadership has been displaced; and who is in the best position to manage the Village’s funds.[4]

ORDER OF THE COURT

It is hereby ORDERED that the judgment of the Tribal Court dismissing the complaint in the case of Village of Mish-ongnovi (Cultural Preservation Board) v. Bemita Humeyestewa, Rolanda Mortis, and Manuelito. Coochwikvia, is OVERRULED.
The plaintiff, the Cultural Preservation Board of the Village of Mishongnovi, has standing to bring its claim to the Tribal Court.
This case is REMANDED to the trial court for hearing on the merits of the complaint, consistent with this court’s findings.

. The facts recounted in this section do not constitute formal findings of fact by this Court or the trial court. The facts described below are drawn from the parties’ briefs to the tribal court and the Appellate Court, exhibits submitted to the trial court, and orders filed by the trial court.

. “Each village shall decide for itself how it shall be organized.” Hopi Constitution, Article III, Section 3.

. For example, the court cautions the trial court that the mere existence or absence of a village constitution is not determinative of whether a village is governed by a tradition authority or by a contemporary elected governing body.

. Rule 27 of the Hopi Indian Rules of Civil and Criminal Procedure direct that summary judgment shall be granted “if it appears that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.” Given the questions surrounding the source of the CPB's claim for authority, e.g. whether the traditional village leader may delegate to his spokesperson the duty of naming a governing body, the court questions whether the standard for summary judgment has been met in this case.