OPINION
MARK JOHNSON, Associate Justice.
This case arises peripherally from a larger dispute between petitioner and certain of his former colleagues on the Tribal Council. The dispute concerns a series of ethics cases brought under the now-repealed Tribal Ethical Standards Ordinance (TESO), former Tribal Code § 275.
An understanding of the procedural aspects of TESO contained at former Tribal Code section 275(f)(1), is important to understanding the issues presented by this case. An action under TESO was initiated by the filing of a sworn affidavit by the complainant against a tribal official (as distinguished from a tribal employee, and including the Tribal Attorneys, cf. former Tribal Code § 275(f)(2)). The Tribal Council received the complaint and referred the matter to an independent hearings officer to conduct discovery and a hearing. Both the complainant and the accused had the rights to be present at the hearing, to present evidence, and to cross-examine witnesses.
The hearings officer made findings and conclusions and, if the hearings officer determined that a violation had occurred, further made a sanction recommendation. The hearings officer’s findings and conclusions were binding on the Tribal Council, but the Council made the decision as to the sanction to be imposed. Only the Council’s sanction decision could be appealed to the Tribal Court.
Significantly, TESO imposed sanctions upon the complainant in certain circumstances:
If the Hearings Officer finds that an allegation of unethical conduct on the part of an Official has been submitted for purposes of harassment or for other improper purposes, or is completely without merit, the complainant shall be liable for and shall pay to the Official against whom such allegation is made the reasonable costs, including attorneys fees, associated with defending against such allegation. In such case, the complainant shall also be liable to the Tribe for the costs of the Hearings Officer * * *
Former Tribal Code § 275(f)(l)(K).
In January 2002, the Council imposed a sanction under TESO upon petitioner in a separate case, and petitioner appealed the sanction to the Tribal Court. While that appeal was pending, petitioner filed five additional TESO matters against various tribal officials including Council Members Haller, Leño, and Reibach Sr.
The Tribal Council’s actions at issue here took place in the course of a single week in late August and early September 2002. Six members of the Council, including Haller and Reibach Sr., met by telephone with the Tribe’s outside attorneys. A decision was made that the Tribal Council should seek to intervene in the five new TESO cases and to request that those cases be stayed pending the outcome of petitioner’s own TESO appeals. Although the Council discussed the legal motions in a subsequent public meeting, it did not adopt any resolution regarding them.
The Council filed its motions to intervene and to stay the five TESO cases on September 5, 2002. Each motion stated the Council’s view of the merits of the complaint in part as follows:
*68 [T]he charges brought by complainant are so clearly frivolous and unfounded that there can be no question of their improper purpose. * * * [T]he complaints are nothing more than trumped-up charges that have been brought against the various individuals in an effort to embarrass them and, equally important, to force them to hire their own counsel and pay attorneys’ fees out of their own pockets.
Petitioner challenged the constitutionality of the Council’s actions by filing the present action in the trial court on October 25, 2002, seeking, as pertinent here, a declaratory judgment, an injunction, and a writ of mandamus. The availability of those various forms of relief in this context, like the propriety of the Tribal Council’s actions, is not before us on this appeal, because the trial court dismissed the action after concluding that petitioner lacked standing to pursue it.[1] We review that ruling de novo. Synowski v. Confederated Tribes of Grand Ronde, No. A-01-10-001, at 2, 2003 WL 25756097, 4 Am. Tribal Law 122,124-25 (Grand Ronde 2003).[2]
Standing is one aspect of the general legal concept of justiciability. Flast v. Cohen, 392 U.S. 83, 98, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). The parties rely on federal eases holding that the “case or controversy” requirement of the United States Constitution limits the jurisdiction of the federal courts to questions presented in an adversary context and to those “historically viewed”—that is, so viewed in the Anglo-American legal tradition—as being capable of resolution through the judicial process. See generally U.S. Const. art. III, $ 2; Flast, 392 U.S. at 94-106, 88 S.Ct. 1942, 20 L.Ed.2d 947. Those cases are useful to us only as they describe the issues to be decided. Ours is a court of general, not limited jurisdiction: we are “empowered to exercise all judicial authority of the Tribe.” G.R. Const, art. IV, § 3 (emphasis added).
At its heart, describing the precise contours of the Tribe’s “judicial authority” represents a cultural question, the resolution of which may or may not be consonant with Anglo-American traditions. It is not necessary for us to describe the outer limits of that authority today, because petitioner asks merely that the Court invalidate the Council’s actions because they were undertaken in violation of the Constitution. It is clear from the constitutional text that the Tribal Court has “the power to review and overturn tribal legislative and executive actions for violations of [the] Constitution* * Id.
The doctrine of justiciability represents a blend of constitutional requirements and policy considerations. Flast, 392 U.S. at 97, 88 S.Ct. 1942, 20 L.Ed.2d 947. As we have discussed, the constitutional requirements that limit the jurisdiction of the federal courts do not constrain us here. The policy considerations, under our law, reduce to a statutory question of whether we should “abstain or stay the exercise of [our] jurisdiction or dismiss an action within [our] jurisdiction [because] the case is of such a nature that the court should not hear it.” Tribal Code § 310(d)(l)(A)(3).
We construe the quoted statutory provision to place the burden on the party asking the court to abstain or stay the *69 exercise of jurisdiction to show that the case is of such a nature that it should not be heard. Thus, the question of “standing” here may be restated as whether the Council has demonstrated that petitioner is an inappropriate person under our law to litigate the underlying dispute about the Council’s executive decision-making process. On this record, we conclude that the Council has not made the required showing.
The Council argues, based on federal law, that petitioner is not a party to the ethics litigation and has no “personal stake” in its outcome. See Raines v. Byrd, 521 U.S. 811, 818-19, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997). The Council provides no evidence that that is the test for standing that arises from tribal custom,[3] but, in any event, the Council is wrong. Petitioner, as the complainant in the ethics cases, was personally subject to sanctions under former Tribal Code § 275(f)(l)(K). That amounts to a “personal stake” in those cases.[4]
Petitioner alleges that the Council, acting at the direction of six members who met in secret, decided to intervene in the ethics cases and to express an opinion to the hearings officer on the merits of those disputes—all in violation of the Constitution. On this factual record, petitioner is an appropriate person to raise those issues.
Reversed and remanded.
WE CONCUR: ROBERT J. MILLER, Chief Justice, DAVID B. THOMPSON, Associate Justice.

. The trial court also denied petitioner's motion to disqualify the judge, which petitioner filed after the judge decided the Council’s motion to dismiss. We affirm that ruling without discussion.

. http:// grandronde.org Icourt/PublishedOpin-ions/SynowskiAppeal.PDF

. Petitioner submits that, simply because of his status as a member of the Council at the time the challenged actions occurred, he has standing to challenge the allegedly extra-lawful acts that his fellow Council members undertook in the Council's name. That position finds some support in the law of other tribes, see Halona v. MacDonald, 1 Nav. R. 189, at [58] (1978), http:// www.tribalresourcecenter. org/opinions/opfolder/1978.NANN. 0000002.-htm, as does a generalized suspicion of standing doctrine as a means for courts to avoid deciding sensitive cases. See id.; Village of Mishongnovi v. Humeyestewa, No. 96AP000008, at [47], 1 Am. Tribal Law 295, 1998 WL 35281676 (Hopi 1998), http://www.tr ibalresourcecenter.org/opinions/opfolder/ 1998..NAHT.0000008. him. We have no occasion to decide today whether petitioner is correct.

. The Council argues that petitioner has not "preserved” his argument that his status as the TESO complainant gave him a personal stake in the outcome of those cases. As already noted, the Council bears the burden to demonstrate that petitioner does not have standing. The question of standing was presented clearly to the trial court, and that court erroneously placed the burden to show standing upon petitioner. We decline to find that petitioner had a duty to preserve error under these circumstances, particularly where the insufficiency of the Council's showing is so clear.